**In re KILAUEA VOLCANO HOUSE, LTD., Debtor.**

**Bankruptcy No. 82–00181.**

United States Bankruptcy Court, D. Hawaii.

Aug. 3, 1984.

Barton M. Watson, Honolulu, Hawaii, for Creditors' Committee.

Raymond Iwamoto, Honolulu, Hawaii, and Arnold M. Quittner, Los Angeles, Cal., for debtor.

### AMENDED ORDER RE: FINAL COMPENSATION TO COUNSEL FOR UNSECURED CREDITORS' COMMITTEE

JON J. CHINEN, Bankruptcy Judge.

Following a hearing held on March 22, 1984, this Court, on March 23, 1984, entered an order awarding Barton Marshall Watson, Esq., hereafter "Applicant", one-half of the amount requested as final compensation, together with all of the expenses incurred. This Order deals with the balance of the amount requested in the application for final fees filed on February 21, 1984.

Based upon the memoranda and records herein and arguments of counsel at the hearing, at which time counsel for Debtor opposed the application for final compensation, the Court finds as follows:

The Court finds that Applicant, instead of being inept and inexperienced as characterized by counsel for Debtor, performed his duties with skill and expertise under difficult circumstances.

It was to a great extent the conduct of counsel for Debtor which caused Applicant to take the actions to which counsel for Debtor now objects. The Court finds that

counsel for Debtor cannot now complain of Applicant's effort to protect the interest of the unsecured creditors.

The Official Unsecured Creditors' Committee ("Creditors' Committee") was appointed on April 27, 1982. Though Debtor and the secured lenders had been in negotiations since April 1982 concerning the claims and status of the secured lenders, and such negotiation did affect the claims of the unsecured creditors, Debtor made no effort to contact the Creditors' Committee.

Applicant was appointed on August 5, 1982, and was made aware of the compromise agreement between the secured lenders, the Debtor and the stockholder-guarantors on August 10, 1982—only one day prior to the "urgent" hearing. On August 10, 1982, counsel for Debtor did not state that the Creditors' Committee was to be a party to the compromise and did not state that the Creditors' Committee was required to waive its right to seek subordination of stockholder-creditor claims as part of the compromise. The only things sought from the Creditors' Committee were (i) its waiver of notice for a "urgent" hearing and (ii) its agreement not to object to the compromise between the said three parties. No plan was then before the Court.

Applicant was concerned over the "urgent" hearing because of the time constraints of inadequate notice as he had never had an opportunity to review the records of Debtor to determine whether or not the trade creditors had any basis to seek subordination or disallowance of the stockholders' claims. Had there been such a basis, the Creditors' Committee would have been an indispensable party to any negotiations with the secured lenders involving the transfer of the Debtor's assets to settle the secured lenders claims.

However, because counsel for Debtor represented that, if the compromise settlement was not immediately approved, the hotels would be closed and the employees would be without employment and because counsel for Debtor further represented he had reviewed the stockholders-creditor claims and that there was absolutely no basis for the subordination of stockholder-creditor claims, Applicant reluctantly agreed to the "urgent" hearing. The Court thus permitted the "urgent" hearing to proceed.

In retrospect, the Court finds that an independent review by Applicant and the Creditors' Committee of the records concerning Debtor's condition, especially on the issue of subordination, would have been beneficial. At the time counsel for Debtor made his representation, Applicant had not read and reviewed the promissory notes upon which stockholder-creditor claims were based.

Had there been full cooperation and disclosure by counsel for Debtor to the Creditors' Committee, much suspicion and litigation would have been avoided.

While the settlement negotiation was being finalized, Applicant requested, on August 10, 1982, permission from Debtor's counsel to attend negotiations between Debtor and the secured lenders. That request was denied by counsel for Debtor. Instead, counsel for Debtor chose to keep Applicant and Creditors' Committee in the dark concerning an aspect of the final compromise settlement (a requirement that the Creditors' Committee waive its right to seek subordination of stockholder-creditor claims) with the secured lenders until just shortly prior to the "urgent" hearing. This secrecy and expedited hearing naturally caused suspicion and some confusion among those who were kept in the dark and led to the various litigations.

In addition, as the hearing continued, it appeared that counsel for the Debtor was representing one of the stockholders rather than the debtor-in-possession. Whereas counsel for Debtor should have remained neutral on the question of subordination between the trade creditors and the stockholders, said counsel took a position in favor of the stockholders and against the trade creditors. Thus, Applicant had to contend not only against the stockholders but also against counsel for Debtor.

348

Following approval of the compromise settlement, Applicant took a meaningful part in the various motions for reconsideration, the disclosure statement and the necessary steps to preserve the right of appeal on the question of subordination.

The Court finds that Debtor and its counsel cannot now object to the actions taken by Applicant on behalf of the Creditors' Committee. It was incumbent on Applicant to take the actions that he did. To do otherwise would have subjected him to a malpractice suit.

The Court finds that Applicant performed admirably under difficult circumstances and awards him the balance of the fees requested in his application. The Debtor is forthwith directed to pay the balance of $22,212.00, plus excise tax in the sum of $888.48 to Applicant.